CAROLINE V. FITZSIMONS, as Executrix, etc., of CHARLES FITZSIMONS, Deceased, Respondent, *v.* FRANCIS P. FITZSIMONS, Appellant, Impleaded with Another.

*Judgment — that ground exists for opening a default does not per se invalidate the judgment.*

After the commencement of an action the plaintiff therein represented to one of the defendants that she made no personal claim against him, and would not let the judgment to be recovered therein stand in his way in business, and would satisfy it at any time when he wanted it satisfied. In consequence of which representations such defendant neglected to interpose a defense to the action.

*Held*, that such facts might furnish grounds for opening the default in the action, and permitting such defendant to answer therein, but did not, in the absence of such permission, affect the validity of the judgment, which, when regularly obtained and entered upon default, gave the plaintiff the right to impose such conditions as to its satisfaction by her as she saw fit, and even to insist upon the payment thereof in full.

APPEAL by the defendant, Francis P. Fitzsimons, from an order of the Supreme Court, made at the Monroe Special Term and entered in the office of the clerk of the county of Monroe on the 6th day of September, 1893, and in the office of the clerk of the county of Oneida on the 7th day of September, 1893, vacating and setting aside a satisfaction of judgment, with notice of an intention to bring up for review on such appeal the report of the referee in said action and the decision of the court confirming the same, and the order appealed from entered thereon.

*William Kernan*, for the appellant.

*Frank J. Hone* and *Henry J. Sullivan*, for the respondent.

HAIGHT, J.:

The plaintiff is the widow and executrix of Charles Fitzsimons, who died in 1888. The defendant Francis P. Fitzsimons is a son of Michael Fitzsimons, a brother of said Charles Fitzsimons. Michael died in April, 1890. In 1884 Michael Fitzsimons failed in business, and thereafter continued insolvent and transacted business in the name of Francis, his son, who signed all the papers requested by his father, in ignorance of their contents and of the personal obligations incurred by him. Charles in his lifetime assisted his brother financially, and at the time of his decease provided in his will that his executrix should continue to indorse his brother's paper as he himself had done, to the amount of $10,000, to aid him in his business pursuit, and if loss be made to the estate by such indorsement, or otherwise, it should be charged to the whole estate. Pursuant to such direction the plaintiff, as such executrix, continued to indorse Michael's paper until his death. It further appears that Michael Fitzsimons was interested in the Clark Mills, and that at the time of his failure these mills were sold upon a foreclosure and bid in by Milton H. Thompson; that Thompson thereupon conveyed the property to Francis P. Fitzsimons, and that Francis executed a bond and mort-

gage thereon to Thompson for $37,500, and also another bond and mortgage on the property to Charles Fitzsimons for $12,500. That thereafter, and in February, 1885, the Clark Mills Manufacturing Company was incorporated with a capital stock of $150,000, with Michael Fitzsimons as its president, and Francis P. Fitzsimons deeded the property so received by him from Thompson to the corporation, for which the stock of the company was issued to him. In 1890 the corporation became insolvent, and Thompson foreclosed his mortgage upon the property, and bid the same in upon the sale. Thereupon the plaintiff brought an action against Francis and the Clark Mills Manufacturing Company upon the bond accompanying the mortgage running to her testator for $12,500, and also brought another action upon a promissory note made by the Clark Mills Manufacturing Company for $1,200, indorsed by her, and which she had been compelled to pay. Judgments were recovered on default in these actions, and upon the $1,200 judgment an execution was issued to the sheriff, who, by virtue thereof, levied upon certain personal property in the mills of the defendant (including two boilers therein), and sold the same, which was bid in by her for the sum of $1,200. In September, 1890, Francis P. Fitzsimons and Mary S. F. Sweeney, a daughter of the plaintiff, contracted with Thompson to purchase the property bid in by him at the foreclosure sale, and also contracted to resell the mill to Hind & Harrison Plush Company at a very advantageous price, and in order to enable them to carry out these transactions Francis, under date of November 10, 1890, wrote Hone, one of the attorneys for the plaintiff, asking him to procure a satisfaction of the judgment procured against him upon his bond then amounting to $16,000 and upwards. At this time the plaintiff was in New York, and Hone immediately addressed her a letter asking her to telegraph him on receipt what to do, saying that it was desirable that the matter should be closed before Saturday. It also appears that Bernard J. Sweeney, the husband of the plaintiff's daughter, who was concerned with the appellant in the repurchase and resale of the mills, saw the plaintiff, his mother-in-law, in New York in reference to the matter and received certain instructions and communications in reference thereto, which he was directed to explain to Mr. Hone, her attorney; that he returned to Utica where he met Mr. Hone;

had a consultation with him in reference thereto, and thereafter Hone, as one of the attorneys of record, executed a satisfaction of the judgment which it is claimed was without authority from the plaintiff and which was vacated by the order appealed from.

We think we must treat the judgment as valid. If, as is claimed, when the action was commenced against Francis, the plaintiff represented to him that she made no personal claim against him and would not let the judgment stand in his way in business and would satisfy it at any time he wanted it, and if in consequence of such representations he neglected to interpose a defense, good grounds may exist for opening the default and permitting him to answer, but such a motion is not now before us. The judgment was regularly obtained and entered upon default, and, treating it as valid, the plaintiff had the right to impose such conditions to its satisfaction by her as she saw fit, even to his payment thereof in full. What were the conditions imposed by her? It is quite possible that there was no intentional fraud practiced upon her in procuring the satisfaction of the judgment. It is, however, quite apparent that her instructions were not understood, or at least not carried out by the persons charged therewith — the effect of which was to deprive her of the judgment she held against the appellant.

It appears that the appellant was the nephew of the plaintiff and that their relations up to this time had been friendly; that upon the execution issued upon her $1,200 judgment she had purchased the personal property found in and about the mills, together with the boilers, which were worth about $7,000; that this property would make good her judgment upon the note of the corporation indorsed by her, and would also satisfy, in part, the $16,000 judgment. It is also apparent that at this time she did not intend to enforce the judgment against him personally. She so states in her letter to Hone of November 16, 1890, but it appears that the boilers were in the mill and that the purpose was to convey them with the mill to the plush company. It seems that an application had been made to her for a loan of $5,000 to enable Francis and plaintiff's daughter May to purchase and resell the mill, and that the plaintiff was willing to make the loan. Her terms in this respect were specifically stated in the instructions accompanying her letter of November fourteenth to her attorney. In it she says: " Bernard (referring to

her son-in-law) will explain to you that they need to complete their sale the sum of $5,000. I am willing to advance that amount upon terms which I will write on separate sheet. * * * In making these terms, I have in mind the notes which I have paid and the fact that my chattels there must be worth, including boilers, about $7,000." Upon the separate sheet was the following: "I will advance $5,000 to complete the purchase, providing: *First.* That the whole property be conveyed to me by deed from Mr. Thompson, and that a clear title of the whole be assured me. *Secondly.* That the sale of the part which is now contracted for by the new purchasers be made by me. The purchase money to be paid to me, and the new mortgage of $25,000 to be taken by me and in my name. The whole be held by me until I am ready to convey to Frank and May. *Thirdly.* All taxes, insurance, expenses of purchase to be paid by Frank and Bernard. In consideration of the above: *First*, I promise to release Frank from the judgment. *Secondly*, I give to May my entire claim on the boilers and other chattels. *Thirdly*, at any time upon payment to me of $12,000 I promise to convey to Frank and to May, share and share alike, the remainder of the Clarks Mills property, viz., that not included in the present sale to new purchasers, and also the mortgage for $25,000 above mentioned. *Fourthly*, the agreement to sell in last claim is to hold good for two years; if in that time the $12,000 is not paid I shall reserve the right to dispose of it to the best advantage possible."

It appears that other arrangements had been made, so that the loan from her of $5,000 was not made, and her proposal was not accepted. It is, however, evident that she made a claim for $7,000 upon the boilers, and that she was willing to discharge the judgment upon receiving payment or security therefor. In her letter of November 16, 1890, she says: "It is true I did not intend to enforce the judgment against Frank personally, but finding a disposition to take possession of the most valuable chattel remaining to me as an offset for my losses, I sent word to you by Bernard that my consent for the release of the judgment was given for the purpose of removing an obstacle to the sale of the mill, and only upon condition that my interests should be otherwise fully protected." As we understand, she demanded payment for the boilers, or security therefor, ·

as a condition for discharging the judgment. As we have shown, this condition she had the right to impose. It is quite possible that she may not have had good title to the boilers for the reason that they were a part of the realty, and passed under the foreclosure sale; but whether she did or not, it makes no difference, for she had the right to demand payment of the $7,000 before she discharged the judgment. Exact justice may be done as between the parties by carrying out her demands in that regard.

The order appealed from should be affirmed, with ten dollars costs and disbursements, unless the appellant, within such time as shall be fixed by the Special Term, upon notice, pays to the plaintiff the sum of $7,000, with interest thereon from November 14, 1890; and if such payment is made, the order appealed from is reversed, and motion denied, without costs of this appeal to either party.

DWIGHT, P. J. LEWIS and BRADLEY, JJ., concurred.

So ordered.